Thomson, P. J.,
delivered the opinion of the court.
The theory of this case advanced by plaintiff’s counsel is that it does not, and cannot, involve any question of title to the stock sought to be recovered; that the refusal of the com *460 pany to regard the directions of Green in relation to the stock certificates, and its detention of the certificates after he had demanded their return, were wrongful; that upon simple proof of the facts concerning the transmission of the certificates to the company, and its conduct respecting them after receiving them, the plaintiff was entitled to he placed in the position he occupied before parting with their' possession, either by the return to him of the same certificates, or the issue to him of new certificates to the same amount. Counsel say that Underwood and Garey were made parties defendant only because they were the officers of the company by whom the wrongful acts were committed; and they also say that as the acts of these officers were the acts of the company, the latter, in view of the facts, is not in a position to avoid a trial of the question of its own misconduct, and direct the litigation into an investigation of another and different question. Upon this theory, no parties other than those named in the complaint were either necessary or proper, and the amendments to their pleadings proposed by Underwood and the company, which if allowed, would introduce into the case matters foreign to its purpose, and outside of its possible issues, were not to be tolerated, and were rightly rejected.
The basis of the argument is a doctrine which, when applied to certain conditions of fact, is indisputable. One may obtain possession of property in such manner, and under-such circumstances, that it would be contraiy to the policy of the law, if not actually unjust, to permit him, while withholding the possession, to controvert the title of the person from whom he received it. But the distinctive features of each particular case are determinative of the general principle by which it shall be controlled; and to find whether, with reference to the case at bar, the position assumed by counsel is tenable, the disclosures made by the record must be examined.
The complaint sets forth the title of the plaintiff in the stock, its transmission by him for transfer, and his ineffectual demand for its return after the transfer was refused. If there were nothing in the case but a pledge of stock with the plain *461 tiff, as security for a debt which remained unpaid, his rights would not seem to admit of question. It may be that upon a trial such would be found to be the exact situation. But there was no trial, and the question is whether upon the sh i wing which was made against the plaintiff, the court couLd do justice between the parties without a trial. The answer of Frank L. Underwood put in issue some important allegations of the complaint, but owing to his attitude in respect to the case, upon which we shall comment hereafter, and to the fact that the averments of his answer are repeated in the pleadings of Theodosia Underwood, which were stricken out, we do not think it necessary to devote much time to him, and shall examine these averments, as they have been adopted by her, when we come to a consideration of the rulings by which she was dismissed from the case, and her pleadings stricken out.
The Tom Boy Gold Mines Company, by its cross-complaint, after averring that the stock was claimed by Theodosia Underwood, prayed that she might be made a party to the suit, to the end that .the conflicting claims of herself and Green might be litigated and adjusted, and the company relieved from responsibility to either. We do not deem it necessary to consider the questions raised by counsel concerning the sufficiency of the cross-complaint as a bill of interpleader, or as an application to make Mrs. Underwood a party defendant, because no question upon its sufficiency was made below, and because it was not in direct response to the prayer of the cross-complaint that she was finally brought into the case. Nearly a year after that pleading was filed, the Tom Boy Company presented its motion for an order making her a party. The motion was sustained, and she was made a defendant, and ordered to appear and plead forthwith. What the showing was in support of the motion, the record does not advise us. But as the presumptions are in favor of the regularity of the proceedings of courts, we must presume that it was sufficient to warrant the order making her a party. Afterwards the plaintiff moved to vacate the order on the *462 grounds, first, that the order was made at the request of the Tom Boy Company; second, that Mrs. Underwood had failed to plead in the cause in obedience to the order; third, that she was not interested in the controversy; fourth, that she had not sought to be made a party; and, fifth, that under the issues the company had no right to make her a party. The first and fourth grounds may be considered together. We suppose their meaning is that third persons cannot be brought into a suit as parties, except upon their own application; and that the order bringing in Mrs. Underwood, having been made at the instance of the Tom Boy Company, was irregular. There are two code provisions on the subject of new parties. Section 16 provides that when a complete determination of the controversy cannot be had without the presence of other parties, the court shall order them to be brought in; and section 17 authorizes the court to make any person a party, upon his own application, who has an interest in the subject of the action. In the last case the motion comes from the party himself ; while in the first, the information upon which the court acts may come to it from some other source, and it is the duty of the court to act when it receives the information, from whatever source the information may be derived. Allen v. Tritch, 5 Colo. 222. It was therefore no valid objection to the order bringing Mrs. Underwood in that it was made at the request of the Tom Boy Company. She became a party also on her own motion, because she entered her appearance voluntarily. Even for the purpose of compliance with section 17, a formal application by her was unnecessary, because an order bringing her in had already been made, and no reason is perceived why she was not entitled to avail herself of that. A further order to the same purport would have been superfluous. We see no irregularity in the manner in which she became a party. The second ground is altogether untenable. The order making Mrs. Underwood a party was not made at her instance, and when it was made she was not within the jurisdiction of the court. Until service of process upon her, or her voluntary appearance, the court could bind her by no *463 order. That portion of the order which required her to appear and plead forthwith was therefore void, and her failure to obey it involved no consequences whatever. The basis of the third and fifth grounds of the motion is evidently the theory of the case to which we have already adverted, and which cannot be intelligibly or intelligently discussed in this immediate connection. If, however, it shall be found that the theory is wrong, then there were no grounds whatever for sustaining the motion, and the ruling was error. And if it was error to sustain this motion, the order striking out the answers and cross-complaints was also erroneous, and for like reasons.- But, notwithstanding the orders dismissing Mrs. Underwood from the case, and striking out her pleadings, may have been technically erroneous, yet if those pleadings disclosed no reason why the plaintiff was not entitled to the relief which he asked, so that, assuming their statements to be all true, the final result must still have been the same that it was, then the error was harmless, and would not warrant a disturbance of the judgment. It is therefore requisite that we now examine her pleadings for the purpose of ascertaining her relation to the subject-matter of the suit, as well as testing the soundness of the theory on which the necessity of her presence in court is denied.
The following is her version of the transactions affecting the stock: She had taken steps to secure for herself this identical stock, and required $28,000 to complete its purchase. She authorized her husband to negotiate a loan in that amount for her. As her agent, and in her behalf, he borrowed the money from the plaintiff. The plaintiff was acquainted with the facts, and knew that the stock was hers, and that Frank L. Underwood was merely her agent. At the time of the transaction, which took place in Colorado, she was out of the state: and her husband, to protect the plaintiff, made his individual note for the amount, to be held by the plaintiff until it could be replaced by hers. The stock had been issued to William Bayly, and had been indorsed by him in blank, so that no further assignment was necessary, *464 and delivery was sufficient to pass - the title. It was then agreed between Mr. Underwood and the plaintiff that of this stock 21,500 shares should be held by the latter as security for the repayment of the loan, and that as the certificates were of such denominations that the stipulated number of shares could not be delivered, the whole 24,000 shares should be left with him, he agreeing to send the certificates to the office of the company in New York, and cause the stock to be reissued in her name, and receive from her 21,500 shares of the stock so issued, together with her own note for the amount of the loan, upon receipt of which, Mr. Underwood’s note should be canceled. When the plaintiff sent the stock to the company, with instructions to reissue it in the name of third parties, the company at her request canceled the old certificates, and issued to her a new certificate, numbered 114, for the entire 24,000 shares. She sent the plaintiff her own note for $28,000, which he received and kept. She did not turn over to him the 21,500 shares which, by her agent, she had agreed to give him, because instead of ordering the reissue of the stock to her, as he had agreed to do, he ordered its issue to strangers; and because he was endeavoring to subject it to the payment of an indebtedness for which it was not pledged; but instead of delivering him the stock, she tendered him, in lawful money, the full amount of the loan, principal and interest, which he refused to receive.
Now upon the only hypothesis which, in the present condition of the case, and for the purposes of this decision, can be entertained, namely, that of the truth of the allegations of Mrs. Underwood’s pleadings, when the company canceled the old certificates, and reissued the stock they represented, to her, it did exactly what the plaintiff had contracted it should do. It is true that his agreement was not with the company, and that the company, in issuing the stock, disobeyed his orders; but his orders were in violation of the contract of pledge, and a breach of the conditions upon which he held the stock; and a court of equity would hardly listen with satisfaction to his complaint, that without his intervention, *465 or even in opposition to his instructions, the stock took the very direction which he agreed it should take when he received it. Under the circumstances which have been detailed, we do not think that the act of the company in issuing the stock to Mrs. Underwood was wrongful; at least, we feel safe in asserting, if the facts be according to her statements, it does not lie in the plaintiff’s mouth to say that it was wrongful. The issuance to Mrs. Underwood of the new certificate, upon the cancellation of the old certificates, invested her with the legal title to the stock. This certificate she afterwards delivered to the company, for the purpose, as she says, of its protection in its contest with the plaintiff, at the same time notifying it that she would hold it responsible for the redelivery of the certificate to her. The opinion of counsel seems-to be that this act of hers in turning the certificate over to the company operated to cancel it; but from the limitation which she annexed to its delivery, we think an exactly opposite conclusion is to be drawn. She parted with the possession, but not with the property. The purpose was to relieve-the company, in case the litigation should result adversely tort, from the embarrassment of having the certificate afloat, possibly in the hands of an innocent purchaser; but the certificate itself, although in the company’s possession, was to-remain hers, at least until her title should be extinguished by a valid judgment. Having received this stock, her contract bound her to cause the certificate to be subdivided, and to deposit 21,500 shares with the plaintiff as security for the payment of her note, but instead of doing this she tendered the amount due. The effect of the tender, if it was unconditional, was to discharge the lien, and terminate all right of the plaintiff in the stock. Jones on Pledges, §§ 544, 545.
A number of questions arise upon Mrs. Underwood’s answers and cross-complaints, by which the plaintiff’s right to relief, as well as the liability of the company to the plaintiff, and its obligation to her, may be affected. If the original transaction was with her, and if the issuance of stock certificate No. 114 was a carrying out of the contract which he *466 made with her, then if his right in the stock is still unimpaired, his remedy would seem to be against her to compel her to fulfill her contract with him by turning over to him the stipulated 21,500 shares. Whether his right to the possession of the stock has not been extinguished by tender of the amount for which it was pledged, is also an important •question, directly presented by her pleadings. These questions cannot be determined in any proceeding to which she is not a party. Furthermore, if the old certificates were canceled, and in lieu of them certificate No. 114 issued to her, another difficulty arises in the way of treating this suit as a summary proceeding to compel the company to restore the status quo. She claims certificate 114 as her property. Before she was made a party, an order was entered against the company to deposit that certificate, together with the others, in court. We find no subsequent mention of it in the record, and it is ignored in the final decree. Presumably it is still in the custody of the court. But wherever it is, on its face it is the property of Mrs. Underwood, and it represents the same stock which prior to its issue was represented by the three canceled certificates. If these certificates can be galvanized into life by an order of the court, certificate 114 must be first gotten rid of; or if by reason of their cancellation it would be proper, in accordance with the plaintiff’s prayer, to issue a new certificate to him for the same stock, before such new certificate could be validly issued, certificate 114 must be annulled, because it stands for that stock. The only other relief to which the plaintiff could in any event be entitled would be a decree for the assignment and delivery by Mrs. Underwood to him of certificate 114. But she cannot be compelled to submit either to the cancellation of that certificate, or to a judgment awarding it to the plaintiff, without an opportunity to be heard. We think a complete determination of the controversy as between the plaintiff and the Tom Boy Gold Mines Company cannot be had without the presence of Theodosia Underwood. Its liability in the proceeding is dependent on the result of an investigation of the matters alleged *467 in Mrs. Underwood’s cross-complaint, and cannot be ascertained without an adjudication of those matters. And it is entitled to the judgment of the court, making such disposition of the stock in controversy, and of the conflicting claims in respect to it of Mrs. Underwood and the plaintiff, that upon its being adjudged to either, the company shall be free from responsibility to the other. Also, the pleadings of Mrs. Underwood disclosed in her such interest in the subject of the suit that she was entitled, in her own right, to become a party. She came in under an order already made, which rendered an application for the purpose by her unnecessary; and, as the law requires no unnecessary act, by her voluntary appearance she acquired the standing of a party. In our opinion, the orders dismissing her from the case, and striking out her pleadings, were erroneous, and should be vacated. The situation requires an investigation of the facts.
After Mrs. Underwood’s answers and cross-complaints had been stricken out, applications were made by the defendants Frank L. Underwood and the Tom Boy Gold Mines Company to amend their respective answers so as to show that the note upon which the plaintiff’s claim to the stock depended, had been altered in material particulars after its execution. That the alterations charged, changed the legal effect of the instrument, is not open to question. If the word “ fifteen ” was written over “ forty ” after the instrument was executed, then the original pledge was $240,000, or 24,000 shares, of stock; and the alteration of this into $215,000, which would be 21,500 shares, — a deduction of 2,500 shares, —would make it appear that 2,500 of the 10,000 shares purchased by the plaintiff, instead of being issued to him directly by the company upon the order of Underwood, as alleged on the other side, were part of the 24,000 shares, and were not deposited in pledge, but were his absolute property. If, in this particular, the note was originally as Underwood now states it was, his memory was in a confused condition respecting it when his answer was drawn, and Mrs. Underwood must have relied on the allegations of his answer, when she *468 made hers. According to the statements of his attorneys, his recollection on the subject then, coincided with his knowledge subsequently acquired, but it was not sufficiently well defined to prevent him from being persuaded by them that he was mistaken. If such was in fact the case, it would furnish a satisfactory explanation of the statements of his answer, and also of that of Mrs. Underwood, concerning the number of shares pledged. The appearance of the note caused by writing one word over the other in such manner that it is difficult to decipher either, would seem to call with considerable emphasis for an explanation, but none was ventured by the plaintiff. If the words, “ if recourse is had to the said collaterals,” were originally in the contract, their erasure would make an important change in the conditions upon which the stock was pledged. With them in, the stock was held as security only for the $28,000, unless an enforcement of the pledge should become necessary, in which case any surplus realized from the sale might be applied to the payment of other indebtedness from Underwood to the plaintiff; while with them out, the stock was held for all claims of the plaintiff against Underwood, whether it should become necessary to resort to it for the payment of the $28,000 note or not.
The alteration of a written instrument in a material part, by the person claiming under it, avoids the instrument; and no cause of- action can be predicated upon it, either in its original or its altered form. Bigelow on Fraud (ed. of 1877), p. 98, et seq. No relief was sought by the plaintiff except against the Tom Boy Company. The proceeding is in equity, and Underwood was made a party, only because he was one of the officers of the company charged with a duty, the refusal to perform which, is the subject of the complaint. In his answer he disclaimed title to the stock, or interest in the subject-matter of the action. Neither himself, nor his property, could be affected by any judgment which might be rendered, and, as he showed himself to be without interest, we are unable to say that the refusal to permit him to amend, *469 would, of itself, warrant a reversal. In a suit against him on the note he could answer its alteration, but nothing is involved in this proceeding except the title to stock. As to the Tom Boy Company, however, the situation is different. Judgment was sought against it, and whatever would constitute a defense to the action, or exonerate it from liability to the plaintiff, it had the right to avail itself of. It is true that the aEowance of the amendment asked was within the discretion of the court. But the discretion with which courts are clothed in such matters, is not an arbitrary discretion. It is a discretion to be exercised soundly, and in the interests of justice. That this instrument, in its present form, if altered as alleged, should be received as a verity, would not be in the interests of justice. The company was chargeable with no lack of düigence in making the appEcation, and we think the refusal to permit the amendment was not the exercise of a sound discretion. Mrs. Underwood was out of the case before the discovery of the alteration, if there was one. Upon her statements she is directly and vitaEy interested in the disposition which shaE be made of the stock. As a claimant of the stock, she also would have the right to interpose in her own behalf every fact which would tend to defeat the claim of the plaintiff. Of course the statements in her pleadings may turn out to be unfounded, and so may the charge of alteration; but it cannot be determined whether they are or not, without evidence. Matters are aEeged materially affecting the cause of action as the plaintiff has stated it, and their truth, as weE as the truth of his statements, should be inquired into.
The judgment is reversed and remanded for further proceedings in conformity with this opinion.

Reversed.